May proceed. And good morning, Your Honors. My name is Rory McHale from Federal Defenders. May it please the Court, I'm here on behalf of Mr. Enoch Montaque. Is it Montague? Our docket sheet says M-O-N-T-A-Q-U-E. Is that in error? No, that's correct. But it's pronounced Montague. That's correct. Oh, very well. Thank you. Thank you. Today I'd like to focus on the two main reasons that the sentence below should be vacated. The first is that the District Court imposed an impermissible condition infringing on Mr. Montague's speech. And the second is that the sentence must be vacated because the District Court provided no explanation for imposing the statutory maximum of additional term of supervised release, which was 31 months. I'll start with the condition infringing on speech. In this case, during the revocation hearing, District Judge informed Mr. Montague that he was not to use profanity while speaking to probation officers in the future. This condition was imposed in the same way that other conditions are. Mr. Montague was informed that he was not to do this. But it wasn't in writing. It was made at the sentencing, was it not? That's correct, Your Honor. It was not in writing. But we assume since the oral controls over the written in terms of sentencing rules? That's correct, Your Honor. But isn't that simple? If the oral statement is one that could be construed as a condition but could also be construed as simply a passing comment, an expression of the judge's distress at what had occurred, then can we not look to the written record to resolve that ambiguity? Well, Your Honor, I have two responses to that. I'd say first, there's no case law indication that the court should or can look to the written judgment to resolve any type of ambiguity. Isn't that sort of like basic law 101 that when there's an ambiguity, you can look to other sources of information to try to resolve the ambiguity? Isn't that what we all learned first year in law school? Well, sure. I think there's certainly, Your Honor, a common sense reason that you might look at other areas. So you don't think the law of the Ninth Circuit should accord with common sense? I do, Your Honor, and I think you're free to. Our position is actually that the ambiguity is not such that the court need to look at other areas to determine what happened. The reason for that is because the district judge did follow normal procedures for imposing condition and stated out what Mr. Montague was forbidden from doing. The fact that there would be consequences, he mentioned a 24-month sentence if he were to violate that, and the fact that he would get a violation petition if Mr. Montague did that. I would just note for the court that should this court conclude that that condition was not imposed against Mr. Montague, then our only request then as to that argument is that in the court's memorandum it be made clear that no such condition was imposed related to Mr. Montague's speech. That is not part of his judgment. However, obviously in our briefs, we do believe it was imposed, and if the court agrees with that conclusion, we believe there are good reasons that portion of the sentence should be vacated, and those are both constitutional and statutory. As to the constitutional free speech argument, no party has disputed that there are free speech interests. Mr. Montague has free speech interests, including free speech interests in profanity, however noncommendable that type of speech may be. When any condition of supervised release is imposed, first that condition must reasonably relate to the 3553 sentencing statutory factors. But secondly, the condition must also involve no greater deprivation of liberty than is necessary to accomplish the factor that it reasonably relates to. And today in our briefs, we submit that not only was this condition not related to any of the sentencing statutory factors, besides the district judge's displeasure with this type of language and that this type of language could be used against a probation officer, but also that any relation that the court might find or that the government does argue is overridden by the deprivation of liberty against Mr. Montague that it imposes. Why doesn't it show his general intent, which is not to take seriously the requirements of supervised release, that the violation that he committed could have been one that was accidental or, at worse, something that did not evidence an intent to callously disregard his obligations. But this conversation with the probation officer could be construed fairly as indication that, on the contrary, he doesn't give a damn about supervised release and, therefore, an appropriately higher sentence is called for. Well, Your Honor, the first response to that is that there's no indication that Your Honor's comments were at all involved in the district judge's determination for imposing this condition. Why isn't it implicit? Well, as to the implicit, I think what undercuts that, Your Honor, is the other material information and comments made available on the record. First, in the very petition against Mr. Montague, his probation officer did say that, to Mr. Montague's credit, he made no attempt to excuse for his behavior. So he accepted that he had violated supervised release by using marijuana one time. But, additionally, and these were my own comments at the sentencing hearing below, there were a variety of reasons to show that Mr. Montague had not been disrespecting the very idea in terms of supervised release, that he had never violated those conditions before, and these are all on page 18 and 19 of our excerpt of record, that he had never been arrested or charged with any new crimes. He had completed six months successfully in a halfway house. He was past the halfway term of his supervised release. He had never had a positive drug test before, never so much as missed a drug testing appointment before in this case. He had also found work and employment after sustaining a very serious and lengthy sentence. The reason I mention those comments is that I think those go towards and contribute to the fact and our argument at the hearing that Mr. Montague did have rehabilitation upon supervised release, that he had been adjusted to the term. What about the refusal to attend anger management classes, and what about the cursing at the probation officer? Were you to ignore that? Certainly not, Your Honor, and I think those two are combined. The petition had said that Mr. Montague would not attend these narcotics anonymous classes. He was told to or asked to attend them every other day for a period of 90 days, and that's the source of the frustration that was expressed in the petition where Mr. Montague did use this profanity in communicating his frustration with his probation officer. However, even though those also contribute to what I think the party should consider and what was in the record, none of these were comments made by the district judge at the sentencing hearing. To the extent they were included in the government's briefs, we wish they had been stated at the sentencing hearing because we believe that's the government attempting to provide an after-the-fact rationalization for what was otherwise a punishment. Just so I'm clear, I may have this wrong, was anger management, as opposed to other kinds of programs, part of his previous conditions of supervised release? It was not, Your Honor. So in imposing now anger management control, doesn't that show the link that the judge is drawing between the comments made to the probation officer and the sentence that he is imposing? He hears you say this guy's done well otherwise, but he also recognizes that he's got a substantial anger control problem. He, therefore, one, imposes a higher sentence, and two, imposes anger management as a further condition. So doesn't that show that he was linking the two together? Respectfully, Your Honor, I would disagree with that contention. First is because that condition of anger management, as well as mental health treatment, were imposed at the very end of the sentencing hearing without additional comment from the district judge. And the second reason I would point out is that in making that connection, the court acknowledged that there were maybe mitigating arguments presented by the defense here. Now, this court's decision in Cardi required the district judge to respond to non-frivolous mitigation arguments that would counsel against that. And so it wasn't just that the district judge said, I'm imposing mental health and anger management treatment, as well as the statutory maximum of additional supervised release. It was that that was announced formally without any further acknowledgement that there might be reasons for or against that. And, Your Honors, I'd request, if there are no further questions at this time, to reserve my remainder for rebuttal. You may do so, counsel. We'll hear from the government. Thank you. Good morning, Your Honors, and may it please the court. Nicholas Pilchak for the United States on this matter. I'd like to respond to a few of the things that appellant's counsel just pointed out. First, Judge Rakoff, as you noted, I think it's exactly right. The appellant's comments, his remarks to his probation officer, show his disregard for the entire program of supervision, which is something that the district court was focused on in this case, and rightly so. His attitude in rejecting supervised release and rejecting the least restrictive, least intrusive measure that they could respond to his acknowledged drug use with, demonstrates his disregard for the entire program. And that was properly one of the motivating factors of the district judge in imposing sentence in this case. Well, doesn't that support the argument that the judge implicitly included his adherence to a respect as part of his conditions of supervised release? Well, there's no doubt that the district court in this case, Your Honor, warned, even strongly warned, the appellant that you should be respectful to your probation officer. And I think that is properly part of the regime of supervision. I think that that is an appropriate part of the court's supervisory function for probation and for supervised release. Well, he went a little further than that. He said if you, I'm paraphrasing, but he said something to the effect, I'm going to make a note in the file. And if you come back here and you've been disrespectful, you're going to get a 24-month sentence. So why didn't that rise to the level of a condition of supervised release? I think there is an ambiguity here, as was discussed a moment ago. I don't think it's crystal clear. I think the reasons why that ambiguity should be resolved in favor of finding that that was a warning, certainly a strong warning from Judge Benitez in this case, but not a formal condition of supervised release, are at least twofold. First, it wasn't in writing. There is a statutory directive to the district court to put conditions of supervised release in writing. And although if there was a clear oral pronouncement, I am now imposing as a condition of supervised release that thou shalt not curse at your probation officer, then that might control the written conditions where it could have been inadvertently omitted. But in this case, I submit there is an ambiguity, and you can resolve that ambiguity by looking at the clear written list of conditions where that's not included. But I thought if there were an ambiguity that the oral pronouncement controls. If there's a clear oral pronouncement, I submit in this case there is no clear oral pronouncement evincing an intent to impose a condition. I think what it is is a strong warning from Judge Benitez, albeit coupled with the remark that if you do this again, I will impose the following custody. But that brings me to my second reason why it shouldn't be construed as a formal condition, which is if we think about the mechanics or the logistics of the situation for a moment, probation would have to file a petition alleging violation. Judge Benitez was not supervising the appellant in this case. Probation would have to file a petition saying- Well, the judge is never supervising, well, very rarely, I should say, because I do recall one case where the judge did assume direct supervision. But that's generally always the case that the judge is not directly supervising. So that doesn't mean that it can't be a condition just because the judge isn't directly supervising. I certainly agree. But probation to allege the violation to initiate revocation proceedings in the future would have to file some sort of violation petition saying the defendant has violated condition number 14 of supervised release. In this case, there was no condition corresponding to the judge's remarks. There would be nothing for probation to hang its hat on, so to speak, unless it tried to reach back to this ambiguous colloquy from the sentencing perspective. Well, the judge could direct or request probation to initiate probation supervision if the judge was of the view that it was a condition and it had been violated. Correct, and if the judge were aware that it had been violated. But I think that's putting the cart before the horse logistically, as I was saying, because probation is doing the supervising. Probation would have to be the first mover to alert the court. He was disrespectful to me. And with all due respect, I don't think that's a plausible outcome. Counsel, if we disagree with your view with respect to whether this is a condition of release or not, do we have to reverse? No, because even if you construe it as a formal condition of supervised release, I think it comports with the limited First Amendment rights that probationers have, as we've tried to explain in our briefing. Just as probationers don't have the same panoply of Fourth Amendment rights that everyday citizens do, First Amendment rights also should be construed as curtailed in the context of supervision. And I think the judge's warning in this case to not use these kind of extreme profanities with the appellant's probation officer is consistent with the overall program of supervision, which really involves limited rights in many contexts. The difficulty, perhaps, with that view is that he did not specify exactly what would be permissible language and what would not. He said, quote, if you ever talk to one of our probation officers the way you talk to these people, the next time I see you, you're going off for 24 months. So I have, frankly, difficulty seeing that that's a condition at all. But assuming it's a condition, what's the terms of that condition? It's incredibly vague, which in the First Amendment context would make it improprious. It would be difficult to implement. I think in the first case what that suggests is exactly what Your Honor is focused on, which is that its very unworkability suggests it's not meant to be a formal condition of release that can be violated because it's clear to know when you've crossed from black into white in violation of that condition. And I think that suggests why it's not intended to be a formal condition. So if this were indeed just a warning, would it be your view that the judge's intention to impose a 24-month sentence if something like this happened again would be unenforceable? Well, I think the judge would have the prerogative to impose any lawful sentence at a future revelation. Well, do you have any objection to our, if we were affirming, doing what your adversary suggested, saying we want to make clear that we do not regard this as a condition of supervised release? Isn't that your position? I don't have an objection to that in particular. The only concern that I would have is if the appellant found himself in future revocation proceedings coupled with some other violation, say there were a dirty drug test or another violation of a listed actual condition of release, and in conjunction with that violation he had engaged in some profane comments with his officer, much like happened in this case, I think the judge would be entitled to consider those comments in connection with a real violation of a condition of supervised release, but I don't think that the district court should be able to, I think it would be proper for this court to instruct the district court, you know, no freestanding violations for use of profanity with a probation officer. And I think that's consistent with the record from the district court because I do believe that's what the district court was trying to do at sentencing in this case. Do you think that it would be appropriate to instruct the district court that the 24-month sentence that the district court prospectively said that it would impose would not be enforceable? Your Honor, I would only be concerned that that starts to shade towards an advisory opinion only because, you know, the circumstances that would surround any future violation, I just... But what do we do with that? What do we do with the fact that there is on the record this statement by the district court saying if he comes back, and there has been some inappropriate language in the judge's eyes that he's going to get a 24-month sentence, how does that comport with the requirement that all of the factors have to be considered when a person comes back for sentencing? Well, I don't believe it would be fair to characterize the district court's statements as saying that it would throw the 3553A or the 3583 factors out the window at any future revocation proceedings. I think the district court's intent was to signal to the appellant that if you're back here in this situation again, I will look upon it harshly. And he said, I will give you a 24-month sentence. So I don't understand why you disagree with Judge Rawlinson's suggestion that we should make clear that it would have been totally improper if he had meant it, if he had said, if you ever say X again, I will sentence you to 24 months. That would have been totally improper. He, I'm sure, the judge recognized that that wasn't his intent. It was the functional equivalent of saying, listen, do that again and I'm going to be really distressed. But he nevertheless used this unfortunate terminology. Why shouldn't we make clear that we do not regard that as remotely binding in any way, shape, or form? Only because I think that the general posture of Ninth Circuit law and review of sentencing is deferential to district court judges in the sense that they are presumed to follow the sentencing factors. They are presumed to consider the appropriate factors of sentencing. I think it would be appropriate in this case to presume that the district court would incorporate those factors at any future revocation proceedings, notwithstanding this statement. But, of course, an order from this court to the district court saying we assume that you will do what we presume that district court judges do, which is to properly consider the factors, would comport with that deferential law. I suspect district judges would not be so hurt by such a reminder. Very well. Well, with that, I see I'm out of time, so the United States submits. Thank you. Thank you very much, counsel. Mr. McHale, you have a little time left. Thank you, Your Honor. And very briefly, much of today's discussion we've tried to find objectively was this condition imposed. I think it would be helpful for the court to also look at this subjectively to see whether a condition was imposed, and that is to ask the question of what would Mr. Montague believe about what he was permitted to say and to do after leaving this revocation hearing. I think due to the district judge using statutory language, requiring Mr. Montague to verbally acknowledge on the record that he understood and indicating that he would make a note in his file about this condition, I think that also lends support to the idea that a condition was, in fact, imposed, and I would encourage again that if this court finds it was not, that that be included to the district judge. You were the lawyer at the sentencing hearing. I was, Your Honor. So did you say could we clarify whether you're imposing a condition or anything like that? I did not, Your Honor. I wish I had. However, I still believe nonetheless because of that warning and that condition stated to Mr. Montague, this task would be encouraged. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision, and we will hear argument next in Tao v. Holder.
judges: Rakoff, O'SCANNLAIN, RAWLINSON